IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

BLM OF THE SHENANDOAH VALLEY, LLC
105-A Lew Dewitt Blvd,
Waynesboro, VA 22980,

CAMERON TURLEY
30 S Windsong Ct,
Fishersville, VA 22939,

BONNIE JO CHAPMAN
260 Windsor Dr.
Fishersville, VA 22939,

MICHAEL PHILLIPS            Case No. 5:21-cv-00060
47 S Windsong Ct,
Fishersville, VA 22939,

CORTEZ NATHAN
30 S Windsong Ct.
Fishersville, VA 22939,

STEPHEN NELSON
260 Windsor Dr,
Fishersville, VA 22939

MCKENZIE MCQUEARY,
260 Windsor Dr.
Fishersville, VA 22939,

ANTWHON SUITER,
30 S Windsong Ct.
Fishersville, VA 22939,

ISHMAEL BARRIOS,
260 Windsor Dr,
Fishersville, VA 22939,

and

DYLAN JORGENSEN,
30 S Windsong Ct.
Fishersville, VA 22939

1

       Plaintiffs,

v.

DONALD L. SMITH, in his Individual and
Official Capacity, Sheriff, Augusta County,
Virginia,
127 Lee Highway,
Verona, VA 24482,

TIMOTHY MARTIN, in his Individual and
Official Capacity, Commonwealth's Attorney for
Augusta County, Virginia,
21 N New St,
Staunton, VA 24401,

and

AUGUSTA COUNTY, VA,
18 Gov Center Ln.,
Verona, VA 24482,

       Defendants,
_____

## PLAINTIFFS' VERIFIED COMPLAINT

Plaintiffs, by and through their undersigned counsel, for their Complaint against Defendants for violations of their FIRST, FOURTH, and FOURTEENTH AMENDMENT Constitutional rights, aver as follows:

### INTRODUCTION

1. Few can argue with the reality that life has changed for all Americans, and indeed all citizens of the planet Earth, in response to the COVID-19 pandemic. Given an increased focus on police violence against Black and Brown people in our country during the pandemic response, we've witnessed the emergence of an "American Spring", where people (particularly young

people) feel compelled to dedicate their lives to changing corrupt or abusive systems. Plaintiffs are part of a "new generation" of activists who spend much of their free time attempting to effect change through protest. In particular, this Complaint revolves around events in the County of Augusta, Virginia; after having heard the call to action—there were two police shootings in short succession that led to demands for police reform—Plaintiffs began protesting actively in Augusta County against the Sheriff's Office. After beginning to protest the Augusta County Sheriff's Office, and due to their protest activities, Plaintiffs became the targets of Sheriff Donald L. Smith, and his various deputies, who subjected Plaintiffs to baseless arrests, fines, citations, and general retaliation in an attempt to deprive Plaintiffs of their First Amendment and other Constitutional rights.

2.  Plaintiffs seek a permanent injunction against all named defendants requiring increased training as delineated in the prayer for relief, *infra*, as well as a permanent injunction preventing the named Defendants from violating any and all protesters' Constitutional rights; further, Plaintiffs seek a declaratory judgment stating that they have been denied their First, Fourth, and Fourteenth Amendment rights by the actions, or inactions as it may be, of each and every named party.

## JURISDICTION

3.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under 42 U.S.C. §1983.

## VENUE

4.  Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that the Defendants are residents of the Western District of Virginia, or political divisions of a county located in the district, and a substantial portion of the events giving rise to this claim occurred in the District.

## PARTIES

5.     Plaintiff BLM of the Shenandoah Valley, LLC is a Limited Liability Company organized in 2021 under the laws of the Commonwealth of Virginia. The organization focuses on advancing the interests of Black lives, in particular protecting Black lives from police misconduct. At all relevant times, the "natural" Plaintiffs were acting as agents of BLM of the Shenandoah Valley, LLC ("BLM-SV") and were also acting in their individual capacity as concerned citizens.

6.     Plaintiff Cameron Turley is an 18-year-old individual residing in and a citizen of Augusta County, Virginia. Mr. Turley has been actively involved in "Black Lives Matter", LGBTQIA rights, immigrant rights, and various social causes since 2017.

7.     Plaintiff Bonnie Chapman is a 22-year-old individual residing in and a citizen of Augusta County, Virginia. Ms. Chapman has been actively involved in equal rights protests, "Black Lives Matter" and various social causes since 2014.

8.     Plaintiff Michael Phillips is a 24-year-old year old individual residing in and a citizen of Augusta County, Virginia. Mr. Philips has been actively involved in "Black Lives Matter", LGBTQIA rights, immigrant rights, and various social causes since 2019.

9.     Plaintiff Cortez Nathan is an 18-year-old individual residing in and a citizen of Augusta County, Virginia. Mr. Nathan has been actively involved in "Black Lives Matter" and various social causes since his participation in the 2012 "hoodie march" in Rockford, IL.

10.    Plaintiff Stephen Nelson is a 19-year-old individual residing in and a citizen of Augusta County, Virginia. Mr. Nelson has been actively involved in "Black Lives Matter" and various social causes since early this year (2021).

11. Plaintiff McKenzie McQueary is a 19-year-old individual residing in and a citizen of Augusta County, Virginia. Ms. McQueary has been actively involved in "Black Lives Matter" and various social causes since 2020.

12. Plaintiff Antwhon Suiter is a 25-year-old individual residing in and a citizen of Augusta County, Virginia. Mr. Suiter has been actively involved in "Black Lives Matter", LGBTQIA rights, immigrant rights, and various social causes since 2016,

13. Plaintiff Ishmael Barrios is a 19-year-old individual residing in and a citizen of Augusta County, Virginia. Mr. Barrios has been actively involved in "Black Lives Matter", LGBTQIA rights, immigrant rights, and various social causes since 2021.

14. Plaintiff Dylan Jorgensen is an 18-year-old individual residing in and a citizen of Augusta County, Virginia. Mr. Jorgensen has been actively involved in "Black Lives Matter" and various social causes since 2020.

15. The Defendant Donald L. Smith is the Sheriff of Augusta County and at all relevant times acted under color of law in restricting Plaintiffs' Constitutional rights. Upon information and belief, Donald L. Smith is a citizen of the State of Virginia and resides in Augusta County, Virginia.

16. The Defendant, Timothy Martin, is the elected Commonwealth Attorney for the County of Augusta.

17. The Defendant, the County of Augusta, is a political subdivision of the Commonwealth of Virginia located within the Western District of Virginia.

## FACTS

18. On June 29, 2021, Bonnie Chapman was cited as being in violation of Augusta County Code Section 15-7(a) (the "Noise Ordinance"). On that day she was protesting with the

assistance of a megaphone amid scores of people and the noise associated with protests and counter protests.

19. Ms. Chapman was cited by a Deputy Sheriff of the Augusta County Sheriff's Office. She was specifically cited for the volume of speech, amplified through a megaphone, that directly related to her participation in the protest.

20. On July 14, 2021, Bonnie Chapman was cited as being in violation of Augusta County the Noise Ordinance. On that day she was protesting with the assistance of a megaphone amid scores of people and the noise associated with protest and counter protest.

21. Ms. Chapman was cited by a Deputy Sheriff of the Augusta County Sheriff's Office while participating in the protest.

22. On June 28, 2021, Antwhon Suiter was cited as being in violation of the Noise Ordinance while participating in the protest by an agent of the Augusta County Sheriff's Office.

23. On June 25, 2021, Michael Phillips was cited as being in violation of the Noise Ordinance while participating in the protest. Mr. Phillips was cited by Sheriff Donald Smith while several of his deputies observed.

24. On July 13, 2021, Michael Phillips was cited as being in violation of the Noise Ordinance while participating in the protest by an agent of the Augusta County Sheriff's Office.

25. On June 25, 2021, McKenzie McQueary was cited as being in violation of the Noise Ordinance while participating in the protest. Ms. McQueary was cited by Sheriff Donald Smith while several of his deputies observed.

26. On July 14, 2021, McKenzie McQueary was cited as being in violation of the Noise Ordinance while participating in the protest by an agent of the Augusta County Sheriff's Office.

27. On June 28, 2021, Ishmael Barrios was cited as being in violation of the Noise Ordinance while participating in the protest by an agent of the Augusta County Sheriff's Office.

28. On July 13, 2021, Ishmael Barrios was cited as being in violation of the Noise Ordinance while participating in the protest by an agent of the Augusta County Sheriff's Office.

29. On June 29, 2021, Dylan Jorgensen was cited as being in violation of the Noise Ordinance while participating in the protest by an agent of the Augusta County Sheriff's Office.

30. On July 20, 2021, Dylan Jorgensen was arrested by Sheriff Donald L. Smith. Earlier that day, Mr. Jorgensen's friend had been taken inside the Sheriff's office, and as Mr. Jorgensen approached to inquire after his friend, approximately eight deputies exited the office shouting "get back!" As Mr. Jorgensen fled the charging deputies and complied with their order, he picked up a megaphone and cursed at Sheriff Smith. Immediately after this, Sheriff Smith charged the still backwards walking Mr. Jorgenson, violently turned him around and handcuffed him. Mr. Jorgenson was charged with disorderly conduct and taken to jail; he eventually posted bail and was released.

31. Stephen Nelson was cited twice (on 6/28/21 and 7/8/21) as being in violation of the Noise Ordinance while participating in the protest by an agent of the Augusta County Sheriff's Office.

32. Stephen Nelson was also arrested for disorderly conduct on July 20, 2021. While leaving the Department's office, after unsuccessfully having pleaded with officers about his friend; Mr. Nelson knocked on a glass window where his friend was being held and "flipped-off" an Sheriff's deputy. No one was in the room except the friend and the deputy. Mr. Nelson continued to his car, which minutes later was surrounded by Sheriff's deputies. Mr. Nelson was informed that when he knocked on the window, he had caused a Magistrate to have a panic attack and therefore was guilty of disorderly conduct.

33. Cortez Nathan was cited twice (on 6/28/21 and 7/8/21) as being in violation of the Noise Ordinance while participating in the protest by an agent of the Augusta County Sheriff's Office.

34. On July 20, 2021, Cortez Nathan was arrested for disorderly conduct. As he approached the Sheriff's Office to inquire after his friend, approximately eight deputies exited the office shouting "get back!" As Mr. Nathan backed away from the advancing deputies and complied with their order, he said "fuck you" to a deputy who summarily arrested him for disorderly conduct. He was incarcerated in a local jail prior to being freed on bail.

35. Cameron Turley was cited on June 25, 2021, as being in violation of the Noise Ordinance while participating in the protest. Mr. Turley was cited by Sheriff Donald Smith while several of his deputies observed.

36. Cameron Turley was cited on July 20, 2021, as being in violation of the Noise Ordinance while participating in the protest by an agent of the Augusta County Sheriff's Office.

37. Another member of BLM-VA, a minor, was cited on June 25, 2021, as being in violation of the Noise Ordinance by Donald L. Smith immediately after telling Smith: "you should protect kids rather than pedophiles." This member of BLM-VA, then-aged 17, was initially charged as an adult in the Augusta County General District Court, as Smith was so flustered by being confronted over the controversy surrounding the Sheriff and his relationship with close friend Felix Chujoy, that he failed to notice the minor's date of birth on the ID he had been provided.

38. At the time of the citations noted above, protests and counter protests were active; tens of people had and were actively using amplification devices and music was being played by counter protesters. The scene and the noise were quite intense.

## COUNT ONE:

**First Amendment—Free Speech and Free Assembly, 42 U.S.C. § 1983**

39. Plaintiffs restate and reallege all previous paragraphs of this Complaint.

40. Every named individual Plaintiff on at least one occasion was cited as being in violation of Augusta County Code section 15-7(a). Such citations were issued by Defendants or their agents.

41. These citations were on each and every occasion issued because of the "volume" of protected speech; to wit, the cause of each citation, at least purportedly, was the volume of amplification provided by a megaphone used in assistance to protest.

42. A true and correct copy of Augusta County Code Sections 15-7 and 15-8 are attached hereto as Exhibit A.

43. Augusta County Code Sections 15-7 and 15-8 cover an extraordinary amount of speech, making huge swathes of otherwise protected speech punishable at the discretion of Defendants.

44. On every occasion that the Defendants cited Plaintiffs for engaging in Constitutionally protected acts, they did so under color of law and to curb Plaintiffs' ability to exercise their First Amendment rights.

45. On information and belief, Defendants willfully and arbitrarily enforced regulations they knew or should have known, were unconstitutional as they chose to apply them.

46. The continued enforcement of Augusta County Code Section 15-7, in the manner the Sheriff's Department has chosen to enforce it, leaves each Plaintiff apprehensive to continue to protest; each Plaintiff plans to continue protesting, but expects to do so at financial risk, and potential "criminal" liability because of the continued enforcement of Augusta County Code Section 15-7.

47. On information and belief, both the County and Sheriff Donald L. Smith either have encouraged the enforcement of a blanket ban on any speech over 65 decibels to be enforced

entirely at the discretion of the Department or they have been completely neglectful as to "Constitutional" training.

48. On information and belief, the statements made by all Plaintiffs, as relevant here, express a political or social belief of great public importance and interest.

49. Given the foregoing, Plaintiffs are entitled to declaratory and injunctive relief establishing that the acts of the Defendants were and are unconstitutional and that the Sheriff's Department must complete training to prohibit further constitutional violations.

## COUNT TWO:

**Fourth Amendment—Unlawful Seizure and Excessive Force, 42 U.S.C. § 1983**

50. Plaintiffs restate and reallege all previous paragraphs of this Complaint.

51. Plaintiffs were seized by Defendants when their agents intentionally, through the use of force, and threat of arrest, terminated their freedom of movement.

52. Defendants were acting under color of law when they violated the Fourth Amendment rights of Plaintiffs.

53. Plaintiffs were also seized by Defendants when they were arrested or otherwise detained.

54. Plaintiff Bonnie Chapman's Fourth Amendment rights were violated when she was detained and cited for Noise Ordinance violations without probable cause; she was detained while exercising well recognized First Amendment rights.

55. Further, given the circumstances around her citation and detention, the use of force was excessive and unreasonable: it was impossible to tell if she had violated the Noise Ordinance at all; there were dozens of parties who contributed to the noise-violation and may have been the "cause"; her detention aided only in altering the content but not the volume of protest-based noise; and she presented no threat to property or person of anyone present.

56. Plaintiff McKenzie McQueary's Fourth Amendment rights were violated when she was detained and cited for Noise Ordinance violations without probable cause; she was detained while exercising well recognized First Amendment rights.

57. Further, given the circumstances around her citation and detention, the use of force was excessive and unreasonable: it was impossible to tell if she had violated the Noise Ordinance at all; there were hundreds of parties who contributed to the noise-violation and may have been the "cause"; her detention aided only in altering the content but not the volume of protest-based noise; and she presented no threat to property or person of anyone present.

58. Plaintiff Dylan Jorgensen's Fourth Amendment rights were violated when he was detained and cited for Noise Ordinance violations without probable cause; he was detained while exercising well recognized First Amendment rights.

59. Further, given the circumstances around his citation and detention, the use of force was excessive and unreasonable: it was impossible to tell if he had violated the Noise Ordinance at all; there were hundreds of parties who contributed to the noise-violation and may have been the "cause"; his detention aided only in altering the content but not the volume of protest-based noise; and he presented no threat to property or person of anyone present.

60. Plaintiff Stephen Nelson's Fourth Amendment rights were violated when he was detained and cited for Noise Ordinance violations without probable cause; he was detained while exercising well recognized First Amendment rights.

61. Further, given the circumstances around his citation and detention, the use of force was excessive and unreasonable: it was impossible to tell if he had violated the Noise Ordinance at all; there were hundreds of parties who contributed to the noise-violation and may have been the

"cause"; his detention aided only in altering the content but not the volume of protest based noise; and he presented no threat to property or person of anyone present.

62. Plaintiff Cortez Nathan's Fourth Amendment rights were violated when he was detained and cited for Noise Ordinance violations without probable cause; he was detained while exercising well recognized First Amendment rights.

63. Further, given the circumstances around his citation and detention, the use of force was excessive and unreasonable: it was impossible to tell if he had violated the Noise Ordinance at all; there were hundreds of parties who contributed to the noise-violation and may have been the "cause"; his detention aided only in altering the content but not the volume of protest based noise; and he presented no threat to property or person of anyone present.

64. Plaintiff Antwhon Suiter's Fourth Amendment rights were violated when he was detained and cited for Noise Ordinance violations without probable cause; he was detained while exercising well recognized First Amendment rights.

65. Further, given the circumstances around his citation and detention, the use of force was excessive and unreasonable: it was impossible to tell if he had violated the Noise Ordinance at all; there were hundreds of parties who contributed to the noise-violation and may have been the "cause"; his detention aided only in altering the content but not the volume of protest based noise; and he presented no threat to property or person of anyone present.

66. Another member of Black Lives Matter Shenandoah Valley, a minor, had his Fourth Amendment rights violated when he was detained and cited for Noise Ordinance violations without probable cause; he was detained while exercising well recognized First Amendment rights.

67. Further, given the circumstances around his citation and detention, the use of force was excessive and unreasonable: it was impossible to tell if he had violated the Noise Ordinance at all; there were hundreds of parties who contributed to the noise-violation and may have been the "cause"; his detention aided only in altering the content but not the volume of protest based noise; and he presented no threat to property or person of anyone present.

68. Plaintiff Cameron Turley's Fourth Amendment rights were violated when he was detained and cited for Noise Ordinance violations without probable cause; he was detained while exercising well recognized First Amendment rights.

69. Further, given the circumstances around his citation and detention, the use of force was excessive and unreasonable: it was impossible to tell if he had violated the Noise Ordinance at all; there were hundreds of parties who contributed to the noise-violation and may have been the "cause"; his detention aided only in altering the content but not the volume of protest based noise; and he presented no threat to property or person of anyone present.

70. In each and every detention based on a Noise Ordinance violation recited above, on information and belief, the Plaintiffs were cited solely because of their political views and the content of their speech.

71. On information and belief, Sheriff Donald L. Smith not only personally allowed for this style of retaliation—on multiple occasions he cited Plaintiffs immediately after they stated damaging remarks relating to his morals or the criminal acts of his "close friend" Felix Chujoy and the Sheriff's brother—but Sheriff Smith also fostered and encouraged a customary practice of retaliation in which agents of the Sheriff's Office were encouraged to retaliate against protesters.

72. Ironically, at the same time that Sheriff Smith tasked dozens of Deputies with the "special assignment" of curbing protestor speech, he was simultaneously interfering in a June 21, 2021, complaint by a local business to his office, which alleged that his brother Ronald Smith had committed felony embezzlement. While Smith ultimately refused to prosecute the felony theft of his brother or properly refer the matter to another law enforcement agency, he continued his campaign against the protestors, ordering their arrest multiple times.

73. Plaintiff Cortez Nathan's Fourth Amendment rights were violated when he was arrested and jailed for disorderly conduct without probable cause; he was detained while exercising well recognized First Amendment rights and attempting to comply with orders issued by agents of the Department.

74. Further, given the circumstances around the arrest, it was inherently unreasonable, and the force used was excessive: Cortez Nathan was complying with an order to move away from the Department's office and walking backward from charging deputies; he presented no threat, nor was he threatening violence; further, after his arrest, he was jailed for a crime which does not allow any incarceration as punishment.

75. Plaintiff Stephen Nelson's Fourth Amendment rights were violated when he was arrested and jailed for disorderly conduct without probable cause; he was detained on pretext after exercising an expressive act protected by the First Amendment.

76. Stephen Nelson knocked on a window where his friend was being held, and "flipped off" the officer whom he believed was abusing his friend, no one but the officer and the friend were present in the room.

77. Stephen Nelson was then told the cause for his arrest was an either apocryphal or unrelated panic attack of a third party.

78. Further, given the circumstances around the arrest, it was inherently unreasonable, and the force used was excessive: even had the knock and rude gesture been the cause of the "panic attack," such conduct does not provide probable cause to arrest a party for disorderly conduct.

79. Plaintiff Dylan Jorgensen's Fourth Amendment rights were violated when he was arrested and jailed for disorderly conduct without probable cause; he was detained while exercising well recognized First Amendment rights and attempting to comply with orders issued by agents of the Sheriff's Office.

80. Dylan Jorgenson was arrested while complying with an order to move away from the Sheriff's Office; immediately after telling Sheriff Donald L. Smith, "fuck you," Sheriff Smith forcibly turned him around and forced his hands behind his back, handcuffing and arresting him.

81. Further, given the circumstances around the arrest, it was inherently unreasonable, and the force used was excessive: Dylan Jorgenson was complying with an order to move away from the Sheriff's Office and walking backward from an enraged and aggressive Sheriff Smith; Mr. Jorgensen presented no threat, nor was he threatening violence; further, after his arrest, he was jailed for a crime which does not allow any incarceration as punishment.

82. In each and every arrest and citation recited above, on information and belief, the Plaintiffs were arrested because of a combination of their political views and their either verbal or expressive cursing of officers. Each of the arrests enumerated above occurred shortly after the individual Plaintiff either verbally or through symbol cursed the Sheriff's officers.

83. Given the foregoing, Plaintiffs are entitled to declaratory and injunctive relief establishing that the acts of the Defendants were and are unconstitutional and that the Sheriff's Department must complete training to prohibit further constitutional violations.

**COUNT THREE:**

**First Amendment—Retaliation, 42 U.S.C. § 1983**

84. Plaintiffs restate and reallege all previous paragraphs of this Complaint.

85. The only interactions that the Plaintiffs have had with Sheriff Donald L. Smith and the Augusta County Sheriff's Department have involved solely verbal, written, and expressive communications relating to their political beliefs.

86. There have been no other meaningful exposures to Defendants other than those that have occurred directly or indirectly from Plaintiffs' protest activities.

87. In each and every single arrest or detention noted herein, the particular Plaintiff was physically removed from the protest in order to comply with demands of the Sheriff's Department—to provide identification, get fingerprinted, *etc.*

88. Further, on no fewer than three occasions where noise violations "occurred," Defendants took the megaphones as "evidence."

89. In short, on multiple occasions, each and every Plaintiff was retaliated against because, and only because, of their exercise of their First Amendment rights.

90. Given the foregoing, Plaintiffs are entitled to declaratory and injunctive relief establishing that the acts of the Defendants were and are unconstitutional and that the Sheriff's Department must complete training to prohibit further constitutional violations.

**COUNT FOUR:**

**Conversion as to Defendants Smith and Martin**

91. Plaintiffs restate and reallege all previous paragraphs of this Complaint.

92. On July 21, 2021, while Defendants continued to engage in their actions to chill Plaintiff's speech, Defendants Martin and Smith commissioned Dave Bourne, the Chair of the

Augusta County Republican Committee, to steal and destroy signs displayed at the Sheriff's office and marked as "Property of Black Lives Matter Shenandoah Valley".

93. The abovementioned sign was the property of BLM-SV.

94. In the days preceding July 21, 2021, both BLM-SV and pro police protestors were regularly leaving signs overnight in the protest area. Starting approximately on or around July 10, 2021, Plaintiffs noticed that several of their signs had been stolen and removed from the protest area overnight while pro police signs remained.

95. In an effort to determine what was happening to its property, Mr. Suiter caused a GPS tracking device to be planted in the wooden frame of a sign that read, "Sheriff Smith Protects Pedophiles". The sign was left in front of the Sheriff's Office as both sides had done for weeks.

96. Mr. Suiter also caused to be placed a surveillance camera positioned upon the sign, recording 24 hours a day.

97. In the morning of July 21, 2021, Republican Chair Dave Bourne can be seen stealing (and destroying) the sign in question.

98. Mr. Bourne wrongfully assumed authority over the sign in question and in violation of Plaintiff BLM-VA's rights, depriving the organization of its possession.

99. Mr. Bourne took the sign first to the office of the Republican Party in Augusta County. At approximately noon, he drove the stolen sign to his residence. Just before 2:30 PM, the GPS coordinates registered in the vicinity of the residence of Defendant Timothy Martin, when suddenly the GPS device ceased working.

100. Mr. Suiter obtained a warrant against Mr. Bourne by citizen complaint. Defendant Timothy Martin caused the charge to be dismissed by admitting it was he who authorized the theft of the sign. (See Exhibit B: Public Statement of Timothy Martin).

**WHEREFORE**, Plaintiffs requests judgment as follows:

A. On Count One, Plaintiffs request that this Court enter a declaratory judgment stating that the acts enumerated above were unconstitutional; Plaintiffs also request that this Court grant mandatory injunctive relief requiring the County of Augusta Sheriff's Department to train all officers in First Amendment rights and prohibitory injunctive relief enjoining all Defendants from further violating any protester's constitutional rights.

B. On Count Two, Plaintiffs request that this Court enter a declaratory judgment stating that the acts enumerated above were unconstitutional; Plaintiffs also request that this Court grant mandatory injunctive relief requiring the County of Augusta Sheriff's Department to train all officers in First Amendment rights and prohibitory injunctive relief enjoining all Defendants from further violating any protester's constitutional rights.

C. On Count Three, Plaintiffs request that this Court enter a declaratory judgment stating that the acts enumerated above were unconstitutional; Plaintiffs also request that this Court grant mandatory injunctive relief requiring the County of Augusta Sheriff's Department to train all officers in First Amendment rights and prohibitory injunctive relief enjoining all Defendants from further violating any protester's constitutional rights.

C. Granting Plaintiffs any such other and further relief as the Court deems just and proper.

Dated: September 6, 2021
Harrisonburg, Virginia

                                          Respectfully submitted,

                                          By: /s/ Christopher M. Okay
                                          Christopher M. Okay  VSB#35611
                                          Chris Okay, Attorney at Law
                                          117 S. Lewis Street, Suite 218
                                          Staunton, VA 24401

(540) 466-3130
chrisokay@icloud.com

ATTORNEY FOR PLAINTIFFS