IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| BLM OF THE SHENANDOAH VALLEY, LLC, *et. al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 5:21-cv-00060 |
| AUGUSTA COUNTY, VIRGINIA, *et. al.*, | ) ) | By: Elizabeth K. Dillon |
| Defendants. | ) | United States District Judge |

**MEMORANDUM OPINION**

BLM of the Shenandoah Valley, LLC ("BLM-SV") and nine of its members bring this

action against Donald Smith (the Augusta County Sheriff), Timothy Martin (the Augusta County

Commonwealth's Attorney), and Augusta County itself, alleging that defendants violated

plaintiffs' First and Fourth Amendment rights by detaining and citing all of the individual

plaintiffs for violations of a local noise ordinance and some of the individual plaintiffs for

disorderly conduct, and that Sheriff Smith and Commonwealth's Attorney Martin stole and

destroyed signs that were used in the protests.  There is also mention of an unnamed minor in the

complaint, but no minor is listed as a plaintiff.[1]

The matter is before the court on (1) plaintiffs' motion for reconsideration of this court's

order denying them leave to file an opposition brief to defendants' motions to dismiss (Dkt. No.

25); (2) Sheriff Smith's motion to strike the allegations in paragraph 72 of the complaint (Dkt.

No. 11); (3) Sheriff Smith's motion to dismiss the complaint for lack of subject matter

jurisdiction under Federal Rule of Civil Procedure 12(b)(1) (Dkt. No. 11), and each of

---

[1] No party has yet addressed the allegations regarding the minor, whether plaintiff BLM-SV could sue on behalf of the minor, or whether BLM-SV has associational standing own its own.  Because the minor is not named as a plaintiff, the court considers any allegations regarding the minor to be irrelevant.

defendants' motions to dismiss the complaint for failure to state a claim under Rule 12(b)(6) (Dkt. Nos. 9, 11, 15).  For the reasons set forth below, the court will deny plaintiffs' motion for reconsideration, grant Sheriff Smith's motion to strike, deny Sheriff Smith's Rule 12(b)(1) motion, grant Sheriff Smith's, Augusta County's, and Commonwealth's Attorney Martin's Rule 12(b)(6) motions to dismiss as to Counts One through Three, and decline to exercise supplemental jurisdiction over Count Four.

## I.   BACKGROUND

### A.  Factual Background

The facts set forth below are as alleged by plaintiffs and must be taken as true for purposes of the 12(b)(6) motions to dismiss, with all reasonable inferences drawn in plaintiffs' favor.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Plaintiff BLM-SV is an organization that "focuses on advancing the interests of Black lives, in particular protecting Black lives from police misconduct."  (Compl., Dkt. No. 1 ¶ 5.) Plaintiffs Cameron Turley, Bonnie Jo Chapman, Michael Phillips, Cortez Nathan, Stephen Nelson, McKenzie McQueary, Antwhon Suiter, Ishmael Barrios, and Dylan Jorgensen ("individual plaintiffs") are residents of Augusta County and members of BLM-SV who are also involved in supporting rights for many other social causes, including, but not limited to LGBTQIA rights and immigrant rights.  (*Id.* ¶¶ 6–14.)  Sheriff Smith and Commonwealth's Attorney Martin were named as defendants in their official and individual capacities.  (*Id.* ¶¶ 15–16.)  Augusta County is also named as a defendant.  (*Id.* ¶ 17.)  There is no allegation that defendants knew of any of plaintiffs' associations or involvement in asserting the social causes alleged.

Individual plaintiffs, acting as "agents" of BLM-SV and as "concerned citizens," engaged in a series of protests that took place in front of the Augusta County Sheriff's Office between June 25 and July 20, 2021. (*Id.* ¶ 1, 5, 20–36.) Plaintiffs claimed to be actively protesting "against the Sheriff's Office" in light of "two police shootings in short succession that led to demands for police reform." (*Id.* ¶ 1.) All individual plaintiffs were cited one or more times for violations of an Augusta County Ordinance, § 15-7(a), which prohibits using any sound-producing or sound reproducing machine or device to make noise at a volume exceeding 65 decibels.[2] (*Id.* ¶¶ 18–36, 41; County Ordinance, Dkt. No. 1-2.) Some individual plaintiffs were detained and cited by Sheriff Smith, while others interacted only with some of his deputy sheriffs.

In describing the details of plaintiffs' protests, the complaint "is not a model of clarity." *Bennett v. Monette*, 507 F. Supp. 2d 514, 517 (E.D.N.C. 2007). According to the complaint, on June 29 and/or July 14, 2021, each of the plaintiffs "was cited as being in violation of the Noise Ordinance while participating in [a] protest." (Compl. ¶¶ 22–29.) Plaintiffs allege that "[t]hese citations were on each and every occasion issued because of the 'volume' of protected speech; to wit, the cause of each citation, at least purportedly, was the volume of amplification provided by a megaphone used in assistance to protest." (*Id.* ¶ 41.) At the time of these citations, "protests and counter protests were active; tens of people had and were actively using amplification devices and music was being played by counter protesters. The scene and the noise were quite intense." (*Id.* ¶ 38.) It is also repeatedly alleged that "there were hundreds of parties who

---

[2] Although several individual plaintiffs were charged with misdemeanor violations of the ordinance in Augusta County General District Court, none of those individuals were ultimately found guilty. *See* https://eapps.courts.state.va.us/gdcourts/ (last visited Mar. 13, 2023) (searches of names of individual plaintiffs indicating each was either found "Not Guilty" of violating § 15-7A or their charges were dismissed).

contributed to the noise-violation and may have been the 'cause'" of a noise violation, and that plaintiffs' detention did not cause the volume of the noise to lessen.  (*Id.* ¶¶ 55–69.)

Notably absent from the complaint is any allegation of the content of any statements made by any of the plaintiffs, or any other protestors or counter protestors.  Yet, plaintiffs conclude, upon information and belief, that they were cited "solely because of their political views and the content of their speech."  (*Id.* ¶ 70.)

In addition to the noise ordinance citations, on July 20, 2021, three individual plaintiffs—Dylan Jorgensen, Stephen Nelson, and Cortez Nathan—were arrested for disorderly conduct.  (*Id.* ¶¶ 30, 32, 34.)  Earlier that day, Jorgensen approached the Sheriff's Office to inquire about a friend who had been taken inside.  In response, eight deputies shouted, "get back!"  (*Id.* ¶ 30.)  As Jorgensen backed away, he picked up a megaphone and cursed at Sheriff Smith.  (*Id.*)  Smith then "violently turned him around and handcuffed him."  (*Id.*)  Similarly, Nathan was told by eight deputies to "get back" after inquiring about a friend.  (*Id.* ¶ 34.)  As Nathan backed away, he said "f*** you" to a deputy, and he was arrested.  (*Id.*)  Lastly, Nelson knocked on a glass window of the Sheriff's Office where his friend was being held and "flipped off" a deputy sheriff.  (*Id.* ¶ 32.)  As Nelson approached his vehicle, deputy sheriffs surrounded him and informed him that his knocking on the window caused a magistrate to have a panic attack.  (*Id.*)  Nelson was arrested.  (*Id.*)

The following day, Commonwealth's Attorney Martin and Sheriff Smith allegedly solicited the Chair of the Augusta County Republican Committee, David Bourne, to remove and destroy signs that were left in the protest area near the Sheriff's Office; the signs were owned by BLM-SV.  (*Id.* ¶¶ 92–93.)  No facts are included regarding the alleged solicitation of Bourne.  A tracking device and surveillance camera were placed on the wooden frame of one of the signs in

question.  (*Id.* ¶ 95.)  On July 21, 2021, Bourne took the sign from in front of the Sheriff's

Office, drove it to his personal residence, and then drove it to Martin's residence.  (*Id.* ¶¶ 97, 99.)

At that point, the GPS monitor stopped working.  (*Id.* ¶ 99.)  Bourne then transported the sign to

several locations and ultimately within the "vicinity" of Martin's residence.  (*Id.*)  A warrant by

citizen's complaint was brought against Bourne for taking the sign.  (*Id.* ¶ 100.)  Martin issued a

public statement in response to the incident.  (Dkt. No. 1-3.)  According to the public statement,

Bourne asked the Commonwealth's Attorney's Office if it was a crime to remove signs "left

behind" on public property and was told that removing the signs would not be a crime.  (*Id.*)  The

public statement ends by noting that the Commonwealth had moved to dismiss the charge against

Bourne because Bourne "correctly believed his conduct was non-criminal" and "had even sought

a clarification as to what the law entailed before he acted."  (Dkt. No. 16-1; Dkt. No. 1-3.)

**B.  Procedural Background**

Plaintiffs brought a four-count complaint against defendants, three counts of which allege

constitutional violations pursuant to 42 U.S.C. § 1983.  Count One alleges that plaintiffs' free

speech and free assembly rights under the First Amendment were violated when defendants

"willfully and arbitrarily" enforced the County noise ordinances against them.  (Compl. ¶¶ 39–

49.)  Count Two alleges unlawful seizures and excessive force arising from the protests and

citations in violation of plaintiffs' Fourth Amendment rights.  (*Id.* ¶¶ 50–83.)  Count Three

alleges that defendants retaliated against plaintiffs on account of their political activism in

violation of their First Amendment rights by enforcing the ordinances.  (*Id.* ¶¶ 84–90.)  Lastly,

Count Four is a conversion claim brought only against Smith and Martin for allegedly

commissioning a third party to steal and destroy the signs.  (*Id.* ¶¶ 91–100.)  Plaintiffs seek

injunctive and declaratory relief as to Counts One through Three.  No relief is sought as to Count

Four.

All defendants moved to dismiss the complaint.  (Dkt. Nos. 9, 11, 15.)  Any briefs in opposition were due on or before October 19, 2021.  (*See* W.D. Va. Civ. R. 11(c)(1).)  Plaintiffs filed a motion for leave to file an untimely opposition (Dkt. No. 21) on November 30, 2021, after this court cancelled the hearing on defendants' motions to dismiss, which was scheduled for December 6, 2021 (Dkt. No. 20), because the motions were unopposed.  Defendants timely opposed the granting of leave. (Dkt. No. 23.)  The court denied plaintiffs' motion for leave to file an untimely response, explaining that plaintiffs completely failed to demonstrate "excusable neglect."  (Dkt. No. 24.)  Plaintiffs filed a motion for reconsideration of the court's order denying their motion to file an untimely opposition (Dkt. No. 25), which defendants again jointly opposed (Dkt. No. 26).

## II.  ANALYSIS

### A.  Plaintiffs' Motion for Reconsideration

Motions for reconsideration under Rule 54 are "not meant to re-litigate issues already decided, provide a party the chance to craft new or improved legal positions, highlight previously-available facts, or otherwise award a proverbial 'second bite at the apple' to a dissatisfied litigant."  *Wootten v. Virginia*, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016) (citation omitted).  Importantly, motions for reconsideration are not an avenue to "merely reiterate[] previous arguments" or "to present a better and more compelling argument that the party could have presented in the original briefs."  *Id.* (citations omitted).  Grounds for reconsideration exist when there is a need to account for (1) an intervening change in the law, (2) new evidence that was not previously available, or (3) correction of a clear error of law or to prevent manifest injustice.  *Id.* (citations omitted).  None of these grounds are present in this case.

As the court noted in its order denying plaintiffs' motion for leave to file an untimely opposition, Local Rule 11 requires a responsive filing within 14 days.  W.D. Va. Civ. R. 11(c)(1).  Plaintiffs filed a motion for leave to file an untimely opposition well after the deadline. Additionally, plaintiffs' motion for leave to file an untimely opposition was not accompanied by a written brief, which is also required by Local Rule 11.  *Id.*  Counsel's one-paragraph footnote explaining his unfamiliarity with local rules and his busy schedule clearly fell short of "excusable neglect."  *See* Fed. R. Civ. P. 6(b)(1)(B).  The court will not reconsider its order. Plaintiffs' motion for reconsideration will be denied.

**B.  Sheriff Smith's Motion to Strike the Allegations in Paragraph 72 of the Complaint**

    **1.  Rule 12(f) motion to strike standard**

Federal Rule of Civil Procedure Rule 12(f) permits the court to strike from a pleading any matter that is redundant, immaterial, impertinent, or scandalous.  Fed. R. Civ. P. 12(f). "Immaterial matter is that which has no essential or important relationship to the claim for relief," and "impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question."  5C Charles Alan Wright and Arthur R. Miller, *Federal Practice & Procedure*, § 1382 (3d ed., April 2022 update).

Although Rule 12(f) motions are generally viewed with disfavor, *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001), they are proper where "the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action."  *Bailey v. Fairfax Cnty.*, No. 1:10-cv-1031, 2010 WL 5300874, at *4 (E.D. Va. Dec. 21, 2010) (quoting Wright & Miller, *supra*).  Further, "[t]he disfavored character of Rule 12(f) . . . is somewhat relaxed in the context of scandalous matter, and materials of this type

often will be stricken from the pleadings in order to purge the court's files and protect the person

who is the subject of the allegations." *Thornhill v. Aylor*, No. 3:15-cv-24, 2016 WL 258645, at

*2 (W.D. Va., Jan. 20, 2016) (citing Wright & Miller, *supra*).  A "scandalous" matter or pleading

is one that casts a derogatory light on someone, uses repulsive language, or detracts from the

dignity of the court.  *Carone v. Whalen*, 121 F.R.D. 231, 233 (M.D. Pa. 1988) (quoting Wright &

Miller, *supra*).

### 2.  The allegations in paragraph 72 of the complaint will be struck as immaterial and scandalous

Paragraph 72 alleges that Sheriff Smith "interfer[ed]" with a complaint filed with the

Augusta County Sheriff's Office concerning his brother by "refusing to prosecute" the matter or

"refer [it] to another law enforcement agency."  (Compl. ¶ 72.)  Smith maintains that these

allegations "are blatantly false, improperly case a derogatory light on [him], and bear no possible

relation to the controversy at hand."  (Dkt. No. 12, at 16.)

The complaint does not explain how any actions by Smith relating to a complaint against

his brother (even assuming their truth) would be relevant to plaintiffs' claims, other than

declaring it "ironic[]" that Smith was responding to the protesters around the same time that he

supposedly took those actions.  Not only is there no essential or important relationship between

the claims for relief and the allegations in paragraph 72, but those allegations also unduly

prejudice both Smith and his brother by casting each of them in a derogatory light for no

probative purpose.  Because the allegations in paragraph 72 are immaterial and scandalous

within the meaning of Rule 12(f), the court will strike them from the complaint.

## C.  Sheriff Smith's Motion to Dismiss for Lack of Subject Matter Jurisdiction

All defendants have moved to dismiss the complaint for failure to state a claim under

Rule 12(b)(6).  Sheriff Smith also moved to dismiss under Rule 12(b)(1) for lack of subject

matter jurisdiction pursuant to the *Younger* abstention doctrine.  Because subject-matter jurisdiction "is a threshold question that relates to the power of the court to hear a case," the court must resolve Smith's 12(b)(1) motion before it can address the 12(b)(6) motions.  *See Rivers v. United States*, No. 6:18-cv-00061, 2020 WL 6603457, at *15 (W.D. Va. Nov. 10, 2020) (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479–80 (4th Cir. 2005)).

### 1.  Rule 12(b)(1) standard and *Younger* abstention

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal when the court lacks subject matter jurisdiction over the subject matter of the action.  Fed. R. Civ. P. 12(b)(1).  The plaintiff bears the burden of proving that subject matter jurisdiction exists.  *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  If the plaintiff cannot do so, then the court must dismiss the complaint.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).  Generally, a federal court has subject matter jurisdiction over a civil action only if it raises a question of federal law, 28 U.S.C. § 1331, or it is between citizens of different states and the amount in controversy exceeds $75,000, *id.* § 1332.  However, courts in this circuit also tend to analyze motions pursuant to the *Younger* abstention doctrine under Rule 12(b)(1), instead of Rule 12(b)(6).  *See, e.g., Kawai v. UaCearnaigh*, 249 F. Supp. 3d 821, 822 (D.S.C. 2017) (granting motion to dismiss under Rule 12(b)(1) to the extent it abstained from exercising jurisdiction under *Younger*).

The Supreme Court's decision in *Younger v. Harris*, 401 U.S. 37 (1971), requires federal courts to "stay their hand when [a] criminal prosecution [is] pending in state court."  *See Jonathan R. by Dixon v. Justice*, 41 F.4th 316, 327 (4th Cir. 2022) (citing *Younger*, 401 U.S. at 41).  "[I]n the absence of exceptional circumstances creating a threat of irreparable injury both

great and immediate, a federal court must not intervene by way of either injunction or declaratory judgment in a pending state criminal prosecution." *Kugler v. Helfant*, 421 U.S. 117, 123 (1975) (internal quotations omitted).  Underlying this rule "is a broader rule of comity: namely, that federal courts should abstain from the decision of constitutional challenges to state action, however meritorious the complaint may be, 'whenever [the] federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests.'" *Lighthouse Fellowship Church v. Northam*, 462 F. Supp. 3d 635, 646 (E.D. Va. 2020) (quoting *Cinema Blue of Charlotte, Inc. v. Gilchrist*, 887 F.2d 49, 52 (4th Cir. 1989) (alteration in original).

Even if a federal court could exercise jurisdiction in such a case, "it should refrain from doing so if (1) there is an ongoing state judicial proceeding that began prior to substantial progress in the federal proceeding, (2) that proceeding implicates important, substantial, or vital state interests, and (3) there is an adequate opportunity to raise constitutional challenges within the framework of the state judicial process." *Robinson v. Thomas*, 855 F.3d 278, 285 (4th Cir. 2017) (citing *Middlesex City Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

**2. The court will not abstain from addressing the merits under *Younger* because there are no longer any pending related criminal prosecutions**

At the time Sheriff Smith filed his motion to dismiss, several individual plaintiffs faced misdemeanor charges in Augusta County General District Court for violating the County noise ordinance, and some were also charged with engaging in disorderly conduct.  (*Ante* at 3 n.2.) However, records indicate that the Augusta County court held a hearing on September 2, 2022, and that all individual plaintiffs who were charged with violating the ordinance either were found not guilty or their charges were dismissed.  (*Id.*)  The disorderly conduct charges against Nathan,

Nelson, and Jorgensen have also concluded but with all three adjudged guilty.  (*Id*.)

These state-court criminal proceedings relating to the noise ordinance are no longer "ongoing" because all individual plaintiffs either were found not guilty or had their charges dismissed, and the Commonwealth, unlike convicted defendants, cannot appeal criminal dispositions in general district court to the circuit court.  *See* Va. Code § 16.1-132 (providing a right to appeal to circuit court only for "person[s] convicted in a district court" of a non-felony). The prosecutions for disorderly conduct are also no longer "ongoing" because, although three of the individual plaintiffs here were found guilty, Virginia law provides only 10 days to appeal a conviction in general district court, *see id.*, and records indicate no defendants have appealed to circuit court.  (*Ante* at 3 n.2.)

Because there are no pending criminal proceedings concerning important state interests related to this case, the court will deny Sheriff Smith's Rule 12(b)(1) motion and consider the motions to dismiss for failure to state a claim.

**D.  Counts One Through Three—Motions to Dismiss for Failure to State a Claim**

**1.  Rule 12(b)(6) standard of review**

All three defendants have moved to dismiss the complaint for failure to state a claim.  To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's allegations must "state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).  The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  Although Rule

8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In deciding the motion, the court must accept as true all well-pleaded facts in the complaint and in any documents incorporated into or attached to the complaint. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it need not "accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (internal quotations omitted).

### 2. The complaint fails to state a claim against Augusta County

Though plaintiffs named Augusta County as a defendant as to Counts One through Three,[3] the claims and allegations in the complaint make no mention of the County. Indeed, there is no facial challenge to the County's noise ordinance. Instead, the complaint focuses almost entirely on actions allegedly taken by the Sheriff and his deputies to enforce the noise ordinance and other criminal laws. Plaintiffs also seek no relief from Augusta County; the complaint requests only declaratory relief establishing the unconstitutionality of the enforcement actions against plaintiffs (none of which were taken by employees of Augusta County), and injunctive relief requiring employees of the Sheriff's Office to complete training (none of whom are under the County's control).

---

[3] Count Four (the conversion claim) is specifically alleged only "as to [d]efendants Smith and Martin." (Compl. 16; *id.* ¶ 92.) However, none of Counts One through Three specify against which parties the claim is brought (if not all of them). As such, the court construes those claims as brought against all three defendants.

The complaint alleges, for example, that "[d]efendants or their agents" issued the citations for violating the noise ordinance (*see* Compl. ¶ 40) and that plaintiffs were "seized by [d]efendants when they were arrested or otherwise detained" (*id.* ¶ 53).  However, the alleged actions of the Sheriff cannot be imputed to Augusta County.  The Sheriff is a constitutional officer who derives his authority expressly from the Virginia Constitution.  *See* Va. Const. art. VII, § 4 ("There shall be elected by the qualified voters of each county . . . a sheriff.") "Constitutional officers are responsible to the voters who elected them but do not depend upon either the government of the Commonwealth or upon the governing bodies of their counties or cities for their authority." *Doud v. Commonwealth*, 717 S.E.2d 124, 126 (Va. 2011).  In other words, the Sheriff and his Office "are distinct from" the County.  *Miller v. Parrish*, No. 3:12cv873, 2013 WL 791241, at *4 (E.D. Va. Mar. 4, 2013).  Therefore, Augusta County is not responsible for actions taken by the Sheriff or his agents, and no amendment to the complaint can change that result.  The court will grant the motion and dismiss the County from this action with prejudice.

### 3.  The complaint fails to state a claim against Commonwealth's Attorney Martin

To the extent that plaintiffs bring Counts One through Three against Commonwealth's Attorney Martin, those claims will also be dismissed.  As with Augusta County, Martin is scarcely mentioned in the complaint; plaintiffs note that he is the elected Commonwealth's Attorney for Augusta County (Compl. ¶ 16), but his name and office are otherwise absent from the allegations until Count Four, at which point he is discussed solely in relation to the conversion claim.  (*Id.* ¶¶ 91–100.)  As with the County, plaintiffs do not seek any relief from Martin.  The Commonwealth's Attorney, like the Sheriff, is also a constitutional officer who is neither accountable to nor an agent of the Sheriff or the County.  *See* Va. Const. art. VII, § 4

("There shall be elected by the qualified voters of each county . . . an attorney for the Commonwealth.")

Because the actions of the Sheriff and his office cannot be imputed to the Commonwealth's Attorney and there are no other allegations in the complaint giving rise to a constitutional claim against him, the court will dismiss Counts One through Three as to Martin.

### 4. The complaint fails to state a claim against Sheriff Smith

Plaintiffs bring three claims against Sheriff Smith under § 1983: (1) that the County noise ordinance was, under the Free Speech and Free Assembly clauses of the First Amendment, unconstitutional as applied to plaintiffs' conduct (Compl. ¶¶ 39–49); (2) that the Sheriff violated plaintiffs' Fourth Amendment rights by unlawfully seizing them, and several plaintiffs' Fourth Amendment rights were further violated when the Sheriff's agents used excessive and unreasonable force (*id.* ¶¶ 50–83); and (3) that plaintiffs were retaliated against "because, and only because, of their exercise of their First Amendment rights" (*id.* ¶¶ 84–90).

### a. Count One (free speech and free assembly) fails to state a claim against Sheriff Smith

An "as applied" challenge to the constitutionality of a statute is "based on a developed factual record and the application of a statute to a specific person." *Richmond Med. Ctr. for Women v. Herring*, 570 F.3d 165, 172 (4th Cir. 2009). "As applied" challenges generally contend that the statute's application to a particular person under particular circumstances deprived that person of a constitutional right.  Thus, a successful "as applied" challenge precludes the enforcement of a statute against the plaintiff alone.  *See Marcellus v. Va. State Bd. of Elections*, 168 F. Supp. 3d 865, 872 n.8 (E.D. Va. 2016) (citing *Fed. Election Comm'n v. Wisc. Right To Life, Inc.*, 551 U.S. 449, 481 (2007)).

To state a colorable claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal constitution or laws by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).  "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotations omitted).  "The first step in any such claim is to identify the specific constitutional right allegedly infringed."  *Id*.

The First Amendment to the U.S. Constitution provides, in relevant part: "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people to peacefully assemble . . . ."  U.S. Const. amend. I.  This provision, which is applicable to municipal ordinances through the Due Process Clause of the Fourteenth Amendment, *see Lovell v. Griffin,* 303 U.S. 444, 450 (1938), "strictly limit[s]" government entities in their ability to regulate private speech and assembly in "traditional public fora."  *Pleasant Grove City v. Summum,* 555 U.S. 460, 469 (2009) (internal quotations omitted).  Traditional public fora include "the streets, sidewalks, parks, and general meeting halls."  *Steinburg v. Chesterfield Cnty. Planning Comm'n,* 527 F.3d 377, 384 (4th Cir. 2008).[4]

"[T]he 'right to amplify speech' is within the protection of the First Amendment."  *Jim Crockett Promotion, Inc., v. City of Charlotte*, 706 F.2d 486, 491 (4th Cir. 1983) (quoting *U.S. Labor Party v. Pomerleau*, 557 F.2d 410, 412 (4th Cir. 1977)).  But "[o]f course, this is not to say that the States or their authorized municipalities may not regulate within reasonable limits such amplified 'speech' or sound."  *Id.* (citing *Kovacs v. Cooper*, 336 U.S. 77, 89 (1949)).  The government may impose reasonable "time, place, and manner" restrictions—regulating only the

---

[4] The court 'spare[s] . . . any extended 'forum analysis' in this case," as neither party has disputed that the area outside the Augusta County Sheriff's Office is a public forum.  *See United States v. Doe*, 968 F.2d 86, 87–88 (D.C. Cir. 1992).

time, place, or manner of speech, but not its content—provided that the restrictions satisfy an intermediate level of scrutiny, rather than the strict scrutiny applied to content-based restrictions. *See City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 428 (1993); *Ward. v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

To pass intermediate scrutiny, a "time, place, and manner" regulation of speech must satisfy three conditions. First, the regulation must be content neutral—in other words, the regulation is "justified without reference to the content of the regulated speech." *Ward,* 491 U.S. at 791 (citations omitted). Second, the regulation must be "narrowly tailored to serve a significant governmental interest." *Id.* It "need not be the least restrictive or least intrusive means" of serving the interest; rather, the regulation must merely "promote[] a substantial government interest that would be achieved less effectively absent the regulation." *Id.* at 799 (internal quotations and footnote omitted). In other words, "[s]o long as the means chosen are not substantially broader than necessary to achieve the government's interest, . . . the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Id.* at 800. Lastly, the regulation must "leave open ample alternative channels for communication of the information" that the speaker wishes to communicate. *Id.* at 791 (internal quotations omitted). Although the available alternatives "need not be the speaker's first or best choice" or provide "the same audience or impact for the speech," the challenged regulation must nonetheless "provide[] avenues for the more general dissemination of a message." *Ross v. Early*, 746 F.3d 546, 559 (4th Cir. 2014) (internal quotations and citations omitted).

No party disputes that the noise ordinance is content neutral. "Laws aimed at restricting loud, disruptive, or otherwise excessive speech" are generally considered content neutral. *See,*

*e.g., McClellan v. City of Alexandria*, 363 F. Supp. 3d 665, 675 n.12 (E.D. Va. 2019) (citing *March v. Mills*, 867 F.3d 46, 55–57 (1st Cir. 2017)).  This is because they do not "depend entirely on the communicative content of" the speech in question.  *Reed v. Town of Gilbert*, 576 U.S. 155, 164 (2015).  The ordinance here specifically prohibits the use of noise-amplifying machines "in such a *manner* or with such volume" that it exceeds 65 decibels at the property line.  Augusta County Ordinance § 15-7(A) (emphasis added).  It is also well established that the government has "a substantial interest in protecting its citizens from unwelcome noise."  *Ward*, 491 U.S. at 796.[5]  That interest "remains significant" when it comes to "protect[ing] even such traditional public forums as city streets and parks from excessive noise."  *Id.*

Sheriff Smith's motion to dismiss Count One thus turns on whether the challenged provision of the noise ordinance, as applied to plaintiffs, is narrowly tailored to serve the government interest and leaves ample alternatives channels of communication.  While those questions are usually highly fact-intensive,[6] and "[c]ourts ordinarily do not 'resolve contests surrounding the facts . . .' through a Rule 12(b)(6) motion," *see United States ex rel. Maharaj v. Estate of Zimmerman*, 427 F. Supp. 3d 625, 639 (D. Md. 2019) (quoting *Edwards*, 178 F.3d at 243), the complaint's allegations are simply lacking here.  The thrust of Count One is that defendants violated plaintiffs' First Amendment rights by enforcing against them an ordinance which prohibits the use of a noise-amplifying device to produce sound exceeding 65 decibels.

---

[5] *See also* Augusta County Ordinance § 15-2 (summarizing board of supervisors' findings that, in relevant part, "excessive sound is a serious hazard to the public health, welfare, peace and safety and the quality of life" and that "the people have a right to and should be ensured an environment free from excessive sound").

[6] *See Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972) ("The crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time."); *Hickory Fire Fighters Ass'n v. City of Hickory*, 656 F.2d 917, 924 (4th Cir. 1981) ("That inquiry in turn requires careful consideration of highly particularized facts, such as the length or lengths of city blocks, sidewalk widths, and traffic patterns at various times and places around town."); *see also Davenport v. City of Alexandria*, 710 F.2d 148, 151 (4th Cir. 1983) (remanding for additional factfinding on whether a city noise ordinance was narrowly tailored).

Plaintiffs allege that the citations "were issued because of the 'volume' of protected speech; to wit, the cause of each citation, at least purportedly, was the volume of amplification provided by a megaphone used in assistance to protest." (Compl. ¶ 41.) The complaint also admits that hundreds were present (*id.* ¶¶ 57–69), the scene and the noise were quite intense (*id.* ¶ 38), and that tens of persons had amplification devices (*id.*). Plaintiffs allege that Chapman and Jorgensen used megaphones (*id.* ¶¶ 18–20, 30) and that megaphones were taken as evidence on no fewer than three occasions (*id.* ¶ 88). As to the other plaintiffs, the complaint is silent as to whether they used noise amplification devices. Without more, it is alleged, upon information and belief, that the ordinance was enforced "willfully and arbitrarily." (*Id.* ¶ 45.) The court is left to guess how the ordinance was enforced arbitrarily—there are no allegations that plaintiffs were not using amplification devices, were not exceeding the decibel limit, or that others who were in violation were not cited. Finally, there are no allegations that the ordinance, as enforced, fails to leave open alternate avenues for communication. The text of the ordinance would ostensibly permit protesters to continue to express their message either without the use of noise-amplifying devices or at a volume lower than 65 decibels.

In considering a motion to dismiss, courts must "view the complaint in the light most favorable to the plaintiff." *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). But while a court is "required to take as true all of a plaintiff's factual allegations, it cannot "read into the complaint allegations that are not squarely presented on the face of the complaint," nor "information and inferences that the plaintiff merely assumes 'go without saying.'" *Huffman v. Dish Network*, No. 3:13-13722, 2013 WL 12355014, at *13 (N.D.W. Va. Sept. 23, 2013). Although plaintiffs need only make a short and plain statement of the claims

18

alleged, the court "cannot overlook [p]laintiffs' failure to do so, especially when represented by counsel." *See id.*

The deficiencies of plaintiffs' claims and allegations become clearer when compared, for example, with the claims and allegations in *McClellan v. City of Alexandria*, 363 F. Supp. 3d 665 (E.D. Va. 2019), where a plaintiff's as-applied First Amendment challenge to a 75-decibel noise ordinance survived a motion to dismiss.  In *McClellan*, the plaintiff, an opera singer who often performed over music played through a speaker on public sidewalks in Alexandria, was performing in the city's Central Business District; she was cited and arrested for violating a local noise control regulation that prohibited anyone from generating noise louder than 75 decibels as measured from at least 10 feet away.  *Id.* at 668–69.  The plaintiff had taken "several precautions to ensure that her singing, together with the accompaniment music played through her speaker, would not exceed that threshold," including adjusting the levels of the accompaniment tracks such that they would remain under 75 decibels, and having her husband use a cell phone application to measure her sound output from 10 to 15 feet away on the night of her citation to confirm her noise was indeed below the threshold.  *Id.* at 669.

Although the *McClellan* court recognized that the City of Alexandria has a substantial interest in protecting its citizens from unwelcome noise, *see id.* at 676, it concluded that the noise ordinance was not narrowly tailored.  *Id.*  In doing so, the court emphasized that plaintiff had explicitly alleged in her complaint that the noise she and her speaker generated on the night in question was below the ordinance's threshold, and further that her performance "was not dangerously loud, disturbing, annoying, or disruptive, but rather was pleasant, relatively quiet, and appreciated by many of the passersby—including the City's former mayor."  *Id.* at 677.  The court also noted that the performance took place in the central business district, "a place with

significant foot and motor vehicle traffic, businesses, pedestrians, and even other performers" to which the City was required to tailor its ordinance.  *Id.*

The *McClellan* court also found that the ordinance as applied did not leave open alternative channels for communication.  *Id.*  Of most relevance here, the court discussed the precautions that the plaintiff allegedly took to stay under the threshold volume and reasoned that "[the p]laintiff's allegations, if proved, would indicate that she was arrested while making noise below the threshold, which gives the lie to defendants' claim that all she had to do to comply with the ordinance was to lower her volume."  *Id.* at 678.  The plaintiff had also alleged that the ordinance deprived her of alternate channels because the volume threshold (which applied to all speech, whether amplified or not) "was unreasonably low and thus precluded her from exercising her First Amendment right to speak (or sing) freely in a reasonable way."  *Id.*

By comparison, plaintiffs' allegations are deficient in nearly every respect.  Plaintiffs do not allege that they complied with the 65-decibel threshold during the protest, nor that they took any noise-related precautions from which the court could presume compliance for purposes of a motion to dismiss.  Rather, plaintiffs merely allege that many other people were making noise at the protest and the noise did not lessen when they were detained.  (Compl. ¶¶ 38, 57–69.)  Moreover, plaintiffs do not allege that their speech was not "dangerously loud, disturbing, annoying, or disruptive," *see McClellan*, 363 F. Supp. 3d at 677, or marshal any other facts to show that the 65-decibel amplified sound limit swept too broadly here to cover speech outside the shadow of the government's interest.[7]  (Compl. ¶ 38.)  Lastly, the complaint scantly

---

[7]   The complaint does allege that the ordinance "cover[s] an extraordinary amount of speech, making huge swathes of otherwise protected speech punishable at the discretion of Defendants."  (Compl. ¶ 43.)  But the court is not required to accept as true "conclusory allegations devoid of any reference to actual events," *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences," *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotations omitted).

describes the location of the protests; the only description of the scene was that "protests and counter protests were active," "tens of people had and were actively using amplification devices," "music was being played by counter protesters," and "[t]he scene and the noise were quite intense." (Compl. ¶ 38.) Plaintiffs do not state whether other protestors were also cited for violating the ordinance, or whether their speech was compliant.

Importantly, unlike the code provision in *McClellan*, the ordinance at issue here does not prohibit the production of raw noise above a certain decibel *by any means*; rather, it prohibits only the use of a "machine or device" to amplify sound above 65 decibels. *See* Augusta County Ordinance § 15-7(A). Plaintiffs remain free to protest, provided they use no amplification device or one at a lower volume.

The court finds that plaintiffs have failed to state a claim under the Free Speech and Free Assembly clauses of the First Amendment as to the Sheriff's enforcement of the ordinance. Plaintiffs' claims under Count One will be dismissed.

> b. *Count Two (Fourth Amendment unlawful seizure and excessive force) fails to state a claim against Sheriff Smith*

Not every interaction between a law enforcement officer and a member of the public is considered a seizure for Fourth Amendment purposes. A seizure occurs only when officers use physical force or a show of authority that in some way restrains the liberty of the person. *Torres v. Madrid*, 141 S. Ct. 989, 995 (2021). "The appropriate inquiry is whether the challenged conduct *objectively* manifests an intent to restrain, for we rarely probe the subjective motivations of police officers in the Fourth Amendment context." *Id.* (emphasis in original) (citing *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724–25 (2019)). The subjective perceptions of the seized person do not define whether a Fourth Amendment seizure has occurred. *Id.* at 998–99.

Looking first to the enforcement of the noise ordinance, the complaint alleges that each plaintiff's Fourth Amendment rights "were violated when [they were] detained and cited for Noise ordinance violations without probable cause" and "while exercising well recognized First Amendment rights."  (Compl. ¶¶ 54–68.)  It continues that "there were dozens of parties who contributed to the noise-violation and may have been the 'cause'; [their] detention[s] aided only in altering the content but not the volume of protest-based noise; and [they] presented no threat to property or person of anyone present."  (*Id.* ¶¶ 55–69.)

First, to the extent that the complaint alleges only that each individual plaintiff was cited by Sheriff Smith or a deputy sheriff for violating the ordinance, that does not, standing alone, constitute a seizure for Fourth Amendment purposes.  *See, e.g.*, *Martinez v. Carr*, 479 F.3d 1292, 1299 (10th Cir. 2007) ("[T]he mere issuance of a citation requiring presence at future legal proceedings does not qualify as a constitutional 'seizure.'"); *see also Glass v. Anne Arundel Cnty.*, 716 F. App'x 179, 180 n.1 (4th Cir. 2018) (citing *Martinez*, 479 F.3d at 1299) (finding that a summons is insufficient to support a Fourth Amendment claim).  Moreover, questioning regarding identity or a request for identification is not a Fourth Amendment seizure.  *Hiibel v. Sixth Judicial Dist. Court of Nev.*, 542 U.S. 177, 185 (2004) (citations omitted).

Even if probable cause were required for any detention to issue a summons, the complaint's allegations rest only on conclusions and not facts.  Probable cause is determined by a "totality-of-the circumstances" approach.  *Illinois v. Gates*, 462 U.S. 213, 230 (1983).  "While probable cause requires more than 'bare suspicion,' it requires less than that evidence necessary to convict."  *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998) (citing *Brinegar v. United States*, 338 U.S. 160, 175 (1949)).  "It is an objective standard of probability that reasonable and prudent persons apply in everyday life."  *Id.*  The probable-cause inquiry turns on two factors:

"the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992).

Plaintiffs do not allege that they were not using an amplification device and do not allege that the noise therefrom was less than that prohibited by the ordinance.  Instead, they note the intense noise level and that hundreds of others may have been the cause of the noise because the noise level did not lessen upon detention of plaintiffs.  Speculation and potential difficulty in proving a matter, however, do not negate probable cause, especially when an ordinance creates a rebuttable presumption of guilt.

In assessing probable cause, "[t]he question to be answered is whether an objectively reasonable [law enforcement] officer, placed in the circumstance, had a 'reasonable ground for belief of guilt' that was 'particularized with respect to the person to be searched or seized.'" *United States v. Humphries*, 372 F.3d 653, 657–58 (4th Cir. 2004) (quoting *Maryland v. Pringle*, 540 U.S. 366, 372–73 (2003)).  The arresting officer's belief need not be correct, or even more likely true than false, so long as it is reasonable.  *Texas v. Brown*, 460 U.S. 730, 742 (1983).  Based on the description provided in the complaint, an objectively reasonable deputy sheriff could have believed that plaintiffs' amplified speech exceeded the permissible volume.  "[T]he burden is always on the plaintiff to negative the existence" of probable cause, *Westreich v. McFarland*, 429 F.2d 947, 949 (4th Cir. 1970) (internal quotations omitted); plaintiffs' allegations do not negate the deputy sheriffs' probable cause and do not give rise to a Fourth Amendment claim.

Finally, there are no allegations regarding the use of any force in the issuance of noise ordinance violation citations.  The complaint only makes the conclusory allegation that given the circumstances around the citations and detentions, "the use of force was excessive and

unreasonable" because "it was impossible to tell" if any individual plaintiffs violated the ordinance, the detentions "aided only in altering the content but not the volume of protest-based noise," and none of the individuals "presented [a] threat to property or person of anyone present." (*See, e.g.*, Compl. ¶ 57.)  But the complaint makes no mention of any specific use of force that was allegedly excessive.  For each of these reasons, the complaint is not sufficient to state any Fourth Amendment claim arising from the noise ordinance citations.

Looking next to the arrests of Nathan, Nelson, and Jorgensen for disorderly conduct, each was supported by probable cause, and the complaint fails to plausibly allege any Fourth Amendment claim based on those arrests.[8]  A person is guilty of disorderly conduct if, with the intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, he, in any street, public building, or while in a public place, engages in conduct having a direct tendency to cause acts of violence by the person or persons at whom, individually, such conduct is directed.  Va. Code § 18.2-415.  After Jorgensen tried to approach the Sheriff's Office to ask about his friend and was told to get back, he ran backward, picked up a megaphone, and cursed at the deputy sheriffs.  (Compl. ¶ 30.)  Similarly, Nathan similarly approached the Sheriff's Office about his friend and, after being told to get back, proceeded to yell "f*** you" at the deputy sheriff.  (*Id.* ¶ 34.)  Lastly, Nelson knocked on the glass window of a room where a deputy was holding his friend and "flipped off" the deputy, which allegedly caused a Magistrate to suffer a "panic attack."  (*Id*. ¶ 32.)  The yelling and cursing by each of these individuals (and Nelson's physical act of knocking on the glass window of the office) provided the sheriffs with probable cause to believe that they had each engaged in disorderly conduct.  *See e.g.*, *United States v. Marshall*, 747 F. App'x 139, 143 (4th Cir. 2018) (finding that officers had probable

---

[8]  Each of these plaintiffs were found guilty of disorderly conduct in Augusta County General District Court.  *See ante* at 3 n.2.

24

cause to arrest a protestor for disorderly conduct for his use of lewd and obscene language where protester did not deny that his language was lewd and obscene).

 "The Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force to seize a free citizen." *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  Excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness" standard.  *Id.*  Under this standard, "the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on scene rather than with the 20/20 vision of hindsight." *Halter v. Hanlon*, No. 7:20-cv-00193, 2022 WL 4594565, at *4 (W.D. Va. Sept. 30, 2022) (citing, e.g., *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)).  Determining the reasonableness of an officer's actions "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotations omitted).  The analysis necessitates "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight[,]" though these factors are non-exhaustive.  *See id.*

The only force allegedly used in effecting the arrests for disorderly conduct was the handcuffing of Jorgensen.  Handcuffing, in and of itself, seldom constitutes excessive force when the underlying arrest was justified.  *See, e.g.*, *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002) (finding no excessive force where officer handcuffed plaintiff, causing her wrists to swell, dragged her to the car and then pulled her into his cruiser).

In sum, the court will grant the motion to dismiss Count Two as to the Fourth Amendment claims regarding disorderly conduct brought by Nathan, Nelson, and Jorgensen, as well as the claims regarding enforcement of the noise ordinance brought by each plaintiff.

       *c.*   *Count Three (First Amendment retaliation) fails to state a claim against Sheriff Smith*

"[A]s a general matter[,] the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected First Amendment activity. *Nieves*, 139 S. Ct. at 1722 (internal quotations omitted). To state a claim for retaliation under the First Amendment, a plaintiff "must allege that (1) she engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected her First Amendment rights, and (3) there was a causal relationship between her protected activity and the defendant's conduct." *Constantine*, 411 F.3d at 499.

A retaliatory arrest/detention claim fails absent a showing that the government official lacked probable cause to justify his actions. *See Nieves*, 139 S. Ct. at 1725. However, if plaintiffs establish the absence of probable cause, they may prevail by showing "that the retaliation was a substantial or motivating factor behind the [arrest/detention]." *Id.* (citations omitted). In other words, plaintiffs "must show that 'but for' the protected expression the [government official] would not have taken the alleged retaliatory action." *Tobey v. Jones*, 706 F.3d 379, 390 (4th Cir. 2013) (alteration in original); *Hartman v. Moore*, 547 U.S. 250, 260 (2006) (recognizing that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway").

At issue in Count Three, broadly, are two categories of alleged retaliatory conduct: (1) the citations and detentions of plaintiffs under the noise ordinance; and (2) the arrests of Nathan,

Nelson, and Jorgensen for disorderly conduct.  The claims under each of these categories can be dismissed at the outset because, as explained earlier, the complaint does not sufficiently allege a lack of probable cause as to the noise ordinance citations or as to the arrests of Nathan, Nelson, and Jorgensen for disorderly conduct.  Thus, the complaint fails to state a claim for First Amendment retaliation.

### E.  Count Four—Smith and Martin's Motions to Dismiss for Failure to State a Claim

Lastly, BLM-SV brings a state-law conversion claim against Sheriff Smith and Commonwealth's Attorney Martin for allegedly commissioning a third party to steal and destroy BLM-SV's signs being displayed at the Sheriff's Office.

Because the court is dismissing the only federal claims in the case, the court has discretion to decline supplemental jurisdiction over the state-law claims and to dismiss them without prejudice pursuant to 28 U.S.C. § 1367(c)(2).  In exercising its discretion, the court must consider factors of judicial economy, convenience, fairness, and comity.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  Generally, though, when a case is in its early stages, courts will decline to exercise jurisdiction.  13D Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, (3d ed., April 2022 Update) ("[I]f the jurisdiction-invoking federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.") (internal quotations omitted).  The court sees no unfairness or inconvenience to either party from a dismissal without prejudice.  The court finds that the comity factor also favors declining jurisdiction because the remaining claims are state-law torts between Virginia residents that occurred in Virginia.  Thus, the state courts have a significant interest in resolving these types of claims.

Considering these factors, the court declines to exercise jurisdiction over the state-law

conversion claim and will dismiss it without prejudice.

### III.  CONCLUSION

For the reasons stated above, plaintiffs' motion for reconsideration is denied, Sheriff

Smith's motion to dismiss for lack of subject matter jurisdiction is denied, Sheriff Smith's

motion to strike is granted, the motions to dismiss for failure to state a claim by Augusta County,

Commonwealth's Attorney Martin, and Sheriff Smith are granted as to Counts One through

Three, and the court declines to exercise supplemental jurisdiction over Count Four.  An

appropriate order will follow.

Entered: March 14, 2023.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge